The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, gentlemen and ladies. Welcome to the Ninth Circuit. All of the counsel are appearing by video today, so we can't welcome you in person, but we're delighted that you're here for your argument. Before we hear the argument, we're going to submit five cases officially. They are Rivera de Canales v. Garland, Peters v. Kijakazi, Vargas Cortes v. Garland, Francis v. Jones, Stevedore & Company, and Barrier v. The City of the Dalles. The first and only case for argument this morning is Kaufmann v. Kijakazi. And if I understand correctly, I guess, Mr. Delbert, you're going first, is that correct? Yes, sir. And you have Mr. Baird who's going to do rebuttal, if you're doing that, is that correct? Yes, provided, depending on which way the argument goes, he will do rebuttal. Okay. How much time do you want to try to save? Two minutes, sir. Very well. Okay. Please proceed then with your argument. All right. Good morning, Your Honors. Christopher Delbert representing Jody Kauffman, Plaintiff Appellant. The substantive issue here is whether the District Court abused its discretion in granting the defendant's 59A motion to alter and amend the judgment. The primary issue there was whether the initial decision had been that the ALJ had erred in consideration of Ms. Kaufmann's subjective reports, primarily because the ALJ did not put the activities that he referred to in line with any specific allegations that he was finding not credible. That rendered the reference to objective findings not sufficient to support the finding, and the court case was remanded on that basis. Counsel, let's say that's correct. Isn't it correct that your client admitted lying and there were lots of other inconsistencies in her testimony? If that's correct, doesn't that constitute substantial evidence that the ALJ's adverse credibility finding was appropriate? Did she admit lying? That she admitted lying and that there were other inconsistencies in her testimony. In other words, even if you take as true what you just talked about, isn't there enough evidence in the record about your client's lying and other inconsistencies in her testimony to independently establish the validity of the ALJ's adverse credibility finding? The only inconsistencies that the ALJ referred to was in her reports about her daily activities. Did she admit lying? The only thing that I can think of that might have constituted lying was whether or not her husband had filled out the third-party functional report. I don't think that constitutes enough to undermine her credibility as a whole, because it's not a question of whether. SSR 16-3P says that credibility is not just a character issue. You look at the specific allegations. Her reporting to the ALJ in the functional reports and at the testimony was consistent to her reports to her treatment providers about the limitations that she had in her daily activities and her inability to walk, her inability to sit, the difficulty she had using her hands. The ALJ even acknowledged these in his summary of the evidence. So there wasn't a substantive difference between her reports to him about her activities and her activities themselves. Counsel, if I may, I'd like to ask about a different topic. If Judge Smith would hear me, is that okay? Oh, sure, please. You also argue concerning the unconstitutionality of the removal provision concerning the Commissioner of Social Security. And my question for you is the following. As I read the briefing, you do not make any factual argument that this appointment or removal provision was prejudicial in a factual manner in your client's specific case and circumstance. Am I correct about that? And if not, what is the argument and the evidence that the removal provision affected the outcome here? Let me preface my answer by saying this was one of the first cases that we briefed the issue. We were still developing our understanding of the issue. Most of the relevant legal standings happened after the briefing at district court was done. We only started briefing it recently. You're talking about the briefs here. You're arguing to us. So we had just started developing the argument. We hadn't really gotten into the harm issue. But my position is that harm here is the same harm that fell in the Shea versus SEC. None of those cases that were remanded by the Social Security Administration following the Shea, none of those cases were they asked to prove actual harm. It was just the fact that the ALJs had not been properly appointed. That was the harm in and of itself. Any case in which that was raised was ultimately remanded for further proceedings. Right. But the ALJ here was properly appointed. You're dealing with a much different level, a review or an in charge of the reviewer's level, several layers up. So I take it that your answer to my question is you are not making any specific factual argument that the outcome would have been different had there been free presidential removal of the commissioner. Well, we do have a line of that argument that we were going to raise on rebuttal, but Mr. Barrett can discuss that right now. All right. I'll wait. That's his specialty, your specialty, ma'am. Sorry. So are you turning that over to him right now? Apparently. Sorry about that, Your Honors. Is that okay? It's fine. Yes. What is the evidence or argument here that the outcome specifically in this case would have been different or affected if the commissioner had been removable at will? The removal provision allowed, in principle, a commissioner a range of discretion acting outside of presidential oversight and control. So to the extent the commissioner invokes executive power, the commissioner could act on his own under that statute. That's all very theoretical, counsel. Is there anything that you can point to in this case? I've seen so far no factual argument, and I take it from your answer to me that you're not making one now. Am I right about that? I will make one now. Okay. All right. Here we go. The expected value of the property interest in disability benefits was diminished for reasons other than disability by the removal statute. So that assessment would have to be- In what way, counsel? In what way? How? Why? Because, again, the commissioner could act on his own outside of presidential oversight and control. So that would diminish the expected value of the property interest in disability benefits. That, once again, is general and theoretical. I'm asking about this case. Would this individual, is there anything about this case that would suggest that this individual would have received benefits but for this removal provision, particularly because at the time the ALJ issued the decision, the head of the agency was an acting commissioner who could be removed? That's not dispositive of the whole case because there was a commissioner, a true commissioner by the end. But what would have been different here in terms of the procedure and the outcome of this specific case? In one degree, you're correct, but this would be very similar to a court case where there's a loss of expected income that is paid at the time of adjudication. But there is no income. She lost. That's why I'm asking you, would she have won if there had been a different commissioner? How can you guess that? Well, it diminished her chances of winning. Why? Because where do you have any evidence or even suggestion that this administrative law judge who was properly appointed would have come out differently if there had been someone, well, there was an acting commissioner, but then ultimately the appeals council would have done something different? Well, the appeals council is under Commissioner Saul. That's right. And so why would they have done something different in view of this record? Well, I think you're not understanding my argument that the expected value. I do understand your argument, but it seems irrelevant where the benefits have been denied. There's no expected value from zero benefits. In other words, we understand your argument and it makes no sense. Okay. Well, it has to be assessed before the final action by the agency. In any event, I'm giving you the best answer I can here. I'll write the law review article later. Do you want to save the balance of your time? Sure. Okay.  Very well, let's hear from the Commissioner's Council. Good morning, and may it please the court. My name is Christopher Brackett. I'm appearing on behalf of the commissioner. I ask that this court affirm the district court's judgment and uphold the ALJ's decision. And turning to this constitutional argument, at the outset, I just want to say that the government concedes that 42 USC 902A3, the statute restricting the president's authority to remove, insofar as that statute restricts the president's ability to remove the commissioner of social security, we agree that that's unconstitutional in light of SELA law and Collins v. Yellen that the Supreme Court case is on point. But I think this court has hit the nail on the head here that there's no prejudicial harm to the plaintiff in this case resulting from that statute. And I think Collins v. Yellen provides a clear roadmap on the remedial analysis here. Unlike cases with appointments clause issues, this case, the removal restriction that was unconstitutional did not strip the commissioner of the authority to take action. There is no defect in the commissioner's appointment. He was nominated by President Trump and confirmed by the Senate, and he served in his office and had full authority to take all action. And that is borne out in Collins and in this court's case, Decker Coal Company v. Herringer addressed a similar removal restriction issue, but held clearly that the officer in question does have full authority to take action. There has to be some sort of nexus between the complaint of decision and the unconstitutional removal restriction. And in this case, as the court has pointed out, the ALJ's actions took place during acting Commissioner Berryhill's tenure, and she could have been removed at any time. She did not enjoy the tenure protection that a confirmed commissioner has. The only agency action during the pendency of Kaufman's claim was the Appeals Council's denial of review in July of 2019. That was the only action that took place during Commissioner Saul's tenure. And plaintiff has not shown any even theory of compensable harm that would arise from this removal restriction. In essence, she would have to show that roughly a month after Commissioner Saul was approved as the full commissioner of Social Security, when the Appeals Council issued its decision, she would have to show that President Trump would have removed the commissioner, but for this removal restriction in order to put someone else into the office to direct the Appeals Council to somehow change the ALJ's decision on her claim. It's just too attenuated to make that that nexus. There is no facts in the record that show any deficiency. Certainly, there's arguments on the merits of the claim, but there's nothing that shows any deficiency when the Appeals Council took its action that would suggest that any such action was necessary, any such presidential action was necessary. There's no indication in the record or in briefing that the president himself had any issues with the commissioner is simply too far removed. This fits squarely into Justice Kagan's remarks during her concurrence on Collins, where she pointed out that she signed on to the decisions for medial analysis because she specifically cited the fact that Social Security decisions would never rise to the level of getting the president's attention and not have to be unwound due to the, at that time, potentially unconstitutional removal clause. Counsel, let me ask you this. As you undoubtedly heard, my colleague, Judge Graber, was asking at the lower level whether the ALJ was properly appointed. If that's true, would we even at any point get to the commissioner? Would we not simply be dealing with whether the ALJ that made the decision, and I suppose the appellate panel, was appropriately appointed within the governing statutes in this case? At the time of the ALJ's decision in October of 2018, he was properly appointed. I don't know if that applies. I don't know if there's any question about the appointment of the appeals counsel. Well, none has been raised. I mean, in theory, if a president wanted to remove the commissioner because the commissioner was doing rogue and crazy things with how cases were decided, there could be an effect, notwithstanding the proper appointment of the lower-level individuals, in theory. I think we're both struggling with the fact that I'm not even sure that the constitutional appointment of the commissioner of Social Security really even comes to the fore here, because you're dealing with people who were appointed within the normal, I guess it's under civil service, actually. People are appointed. They act. Whoever the commissioner is, that's the way they get appointed. Let's assume, as you say, that the statute is unconstitutional. Let's say there was some evidence that President Trump wanted to remove. The commissioner couldn't do it. Does that mean that all the Social Security cases coming along the line would be avoided or could be avoided because of that constitutional stalemate? I think that there would have to be some nexus between the ultimate decision that a plaintiff would be challenging in court to that restriction. Perhaps. I mean, one can imagine a case in which the commissioner wanted to deny benefits for some reason, got very interested in a particular case. The president thought that was terrible and thought there should be benefits, that you could demonstrate that somehow that problem changed the outcome in your case. Again, but purely theoretically, because that's not so here. There's no record of that. Your Honor, I think that's exactly right. It has to be apparent that, for example, in this case, that Kaufman's case caught the attention of the president and that the president then wanted to change the outcome. And the commissioner refused, saying, I don't think so. I think this was correctly decided. I'm going to direct my appeals counsel to deny review, whatever you might think, Mr. President. And then the president being unable to remove the commissioner would then be then his authority under the as the head of the executive branch would be compromised. And that would be the issue that the court had. And, you know, when it comes to these cases like Collins versus Yellen there, you know, it seemed more on point there when we're dealing with higher level items. But when you're when you're talking about one of the thousands of Social Security claims that our agency adjudicates over the course of a year, somehow catching the president's attention, the fact that it's so far removed simply places this outside the purview. Before you run out of time, could you comment on the Rule 59E issue? Yes, Your Honor. I think that the court, the district court correctly granted the 59E motion. 59Es are something that we file if there is a clear error here. When the district court looks to the ALJ's assessment of the claimant's subjective symptoms, the court only looked at basically the ALJ's. The ALJ had said the reasons why, like kind of given a roadmap early on in his decision for how he was going to address these issues. And that if you look at the district court's judgment, the district court only cites that one page and says that in essence, the ALJ didn't articulate how the activities responded to the claimant's allegations. Well, then we pointed out in our 59E motion that, yes, in fact, further down the line in the decision toward the end of the analysis about the RFC, the ALJ did get more in-depth citing a consultative examiner's recitation of the activities that the claimant described to him. The claimant's activities that arose throughout the record and how those pertain to her allegations of what she claimed were disabling limitations. And the district court correctly found that it had not properly addressed the ALJ's decision and in turn granted the 59E motion citing it as clear error and then made a new decision. I see my time has hit zero. If the court has any further questions, I'm happy to entertain them. Do either of my colleagues have a discussion? No. Thank you very much. Very well. Thank you, counsel. Thank you, Peter. So I believe, is it going to be Mr. Delbert who's going to respond or your colleague? I will respond, your honors. Very well. Please. So regarding the 59E, because that's a more substantive issue, the ALJ kind of spilled out a jigsaw puzzle and had the court put it together. He never truly cited any specific activities that undermined any specific allegations. He said that she walked, but he didn't ever address the qualifying statements that she made regarding her ability to walk. He noted that she sewed and crocheted, but she's never said she's unable to. She's just only able to for short periods of time before experiencing pain. Her reports to the constitutive examiner don't show that she was doing that outside of those limits. All right. Well, counsel, you're out of time. Do you have any very brief comment that you want to finish with here? Yes. One brief comment. Yes, your honors. Your colleague is going to do it. Okay. All right. Regarding the constitutional issue, if the commissioner does not invoke executive power, as my colleague has said, and as the court has voiced, then section 902A3 should be found constitutional. It's presumed constitutional at enactment, and it looks like there's no actual harm. There's no potential harm, and there is no invocation of executive power. Therefore, it's constitutional, and this court should find it to be so. Okay. Thank you very much to both counsel, for all three counsel, rather, for your argument. The case just argued is submitted, and the court stands adjourned for the day and the week. Please rise.
judges: GRABER, BEA, SMITH